# Lorna B. Goodman
551 Madison Avenue • Seventh Floor • New York, New York 10022
212.223.7400 • GLornaB@gmail.com

February 23, 2016

The Honorable Ann M. Donnelly
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East, Chambers N415
Brooklyn, NY 11201

Re: <u>Eric Sorenson v. Sandra Simpson, 15-cv-4614 (AMD) (SMG)</u>

Dear Judge Donnelly:

    This case concerns an attorney who worked tirelessly and largely successfully for his sister-in-law, Sandra Simpson, for 12 years, and was callously discharged without notification when Simpson and his brother became estranged. Although Defendant ultimately was awarded $1 million on her claims, Plaintiff Eric Sorenson was not paid a penny.

    In 1987, Sandra Simpson ("Simpson"), a United States citizen, and Dr. Mustafa Karim, a permanent resident of the United States who was born in Egypt, were cruising in the Mediterranean when they were forced by an unexpected storm to anchor at the Benghazi port in Libya. The Libyans proceeded to hold the couple hostage: Simpson for three months and Karim for nine months. Karim died in 1993. Simpson subsequently married the brother of Plaintiff Eric Sorenson ("Sorenson"), an attorney. In May 1999, Simpson and the Estate of Karim ("Karim") retained Sorenson to prosecute their claims of unlawful abduction and illegal detention against the Libyan government.

    Sorenson litigated the case against Libya from 1999-2008 in the U.S. District Court for the District of Columbia, where he successfully defended three motions to dismiss by the Libyan government, and in the U.S. Court of Appeals for the District of Columbia, where he successfully defeated Libya's appeal of the District Court's decision of two of the three motions (the third was never appealed). This litigation consumed hundreds of hours of legal work on Sorenson's part and dealt with serious and complex issues of international law. See six decision from the D.C. District and Appellate Courts in *Simpson v. Socialist People's Libyan Arab Jamahiriya* at 180 F. Supp 2nd 78 (2001), 326 F. 2d 230 (2003), 362 F. Supp 2d 168 ((2005), 2005 U.S. App. LEXIS 22458 (2005), 470 F. 3d 356 (2006), *and* 529 F. Supp 2d 80 (2008) which bear witness to the extent and persistence of Sorenson's advocacy and the enormous difficulties Sorenson had to overcome to maintain Simpson's and Karim's claims. The retainer agreement during these years is attached to this letter as Exhibit A.

    In 2008, Congress passed the Libyan Claims Resolution Act, Pub.L. No. 110-301, 122 Stat. 2999, ("LCRA"), which established an administrative tribunal, the Foreign Claims Settlement Commission ("FCSC" or "Commission"), to adjudicate claims like Simpson's against the Libyan government, but only on the condition that all prior litigation in U.S. judicial forums be dismissed.

    The Federal action was duly dismissed and, in 2009, Sorenson and Simpson negotiated an updated retainer agreement (Exhibit B). This new retainer reinstated the terms of the former agreement, and added a provision to cover the eventuality of Simpson discharging Sorenson. The 2009 retainer states: "If I (Simpson) terminate my attorney before a judgment or settlement that,

1

in fact, does occur, I understand I will be liable for all his expenses and a reasonable fee for his services."

Sorenson continued to represent Simpson for two more years before the FCSC, filing six claims on behalf of her and Karim. But around the time his brother and sister-in-law became estranged, he was unceremoniously discharged without cause. Simpson never informed him of his discharge and Sorenson found out only when he called the FCSC for an update on Simpson's claims.[1] Simpson then hired the firm Winston & Strawn, which, relying predominantly on material created by Sorenson, was subsequently able to obtain an award of $1 million from the Libyan Fund.

Defendant Sandra Simpson now argues that under Title 22 USCS sections 1621 et seq. an attorney cannot claim more than 10% of the total amount paid, as Al J. Daniel states "in connection with her Commission Claim." But this wording distorts the actual phrasing of the statute and ignores the common sense meaning of the legislative enactment. Title 22 USCS sections 1621 et. seq. provides:

> Attorney's fees; limitation. No remuneration on account of services rendered on behalf of any claimant <u>in connection with any claim filed with the Commission under this title</u> (22 USCS sections 1621 et.seq.) shall exceed 10 percentum of the total amount paid pursuant to any award certified under the provisions of this title …on account of such claim. (Emphasis supplied)

The clear import of this provision is that the attorney's fees limitation applies only to work performed on **<u>any claim filed with the Commission.</u>**

This lawsuit does not seek remuneration for work on any claim filed with the Commission. Here, Plaintiff seeks only a "reasonable fee" for work performed in Federal Court on federal and state law claims. Defendant's argument here would deny an attorney remuneration for work which was performed even before the LCRA was enacted and prior to the existence of jurisdiction for any claim before the FCSC. There is no support in statute or case law for such a proposition.

Nor is there any underlying rationale or precedent for limiting reasonable attorney's fees in complicated federal litigation where professional legal skills are virtually required. By contrast, the rationale behind the contested provision limiting attorney's fees for work at the FCSC is based upon the fact that the Commission was designed to be accessed by a claimant without an attorney. Its procedures can be utilized without technical legal expertise.

Sorenson's claim, by the explicit terms of his Amended Complaint is not even measured by the amount of Simpson's recovery from the FCSC. The retainer agreement upon which Sorenson bases his complaint in this action, originally a contingency agreement, automatically and explicitly evolved into a "reasonable fee" or quantum meruit agreement when Simpson discharged Sorenson in 2011.

The only case Plaintiff has found that has looked at this question has come down squarely on the side of preserving Mr. Sorenson's right to recover his fees, regardless of the alleged "immunity" of 90 percent of the award. In *Pan Am Flight 73 Liaison Group v. Davé, 711 F. Supp 2d 13,* survivors of a highjacking by Libyan-supported terrorists, both Americans and

---

[1] Defendant's statement that Sorenson was dismissed because he violated her rights under 22 USC § 16 23f, "and for other well founded, but fact-bound reasons" is belied by Simpson's notification of change of counsel filed with the FCSC. She never mentions any reason for the discharge, and clearly not Title 22 USCS § 1621 et. seq. as Defendant's counsel suggests.

foreign nationals, agreed to split any monies they recovered in a joint prosecution agreement. When certain Americans received awards from the FCSC pursuant to the LCRA (which could not be accessed by foreign nationals), the successful claimants refused to share their proceeds with other members of the group and refused to arbitrate as was required by the joint prosecution agreement. But the Court held that the pre-existing agreement must be honored, calling any other result "absurd."

> If the immunity provision is perpetual, individuals who have obtained claims settlement funds would forever have a cache of money untouchable in any court proceeding for any purpose. For example, a creditor in a bankruptcy proceeding - - a third party- - would be unable to access any funds traceable to a Foreign Claims Settlement Commission award. The Court need not adopt such an irrational reading of the Act's immunity provision when its structure supports a narrower, more reasonable interpretation.

Defendant's additional claim that this case should be dismissed because this court has no jurisdiction over Simpson, who lives in Pennsylvania, is patently frivolous. The Amended Complaint plainly demonstrates the basis for jurisdiction and venue in the Eastern District of New York. It states that Simpson met, negotiated, and executed two retainer agreements in the Eastern District. Amended Complaint paragraph 3. See *Sands Bros. Venture Capital, LLC v Burris, Schoenberg & Walden, and LLP.* 28 Misc 3d 1236(A).

Finally, the procedural error cited by Simpson is *de minimis*, non-prejudicial, and excusable; an error which the court has the discretion to pardon. I was not the initial attorney on this case and mistakenly believed, based on the date on a draft complaint in the file, that a summons and complaint had been first filed, but not served, on September 28, 2015. Thinking I had 120 days after September 28 to serve, I caused the Amended Complaint to be personally served on Simpson on January 26, 2016.

Under FRCP 4, (m) for failure to serve within 120 days the court may dismiss the action without prejudice or order that service be made within a specified time. If Plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. Defendant Simpson did not suffer any prejudice in being served a month and 20 days after the due date. There is no statute of limitations problem here so if the case is dismissed, Plaintiff will simply re-file and re-serve. This would be a waste of time and money and serve no legitimate purpose.

Mr. Daniel also says that the Amended Complaint was amended without consent thereby violating FRCP 15. But, pursuant to this rule, a litigant has 21 days after serving a complaint to amend as a matter of course. Since nothing had ever been served, Plaintiff did not need permission to amend the original filed but unserved Complaint. In any case, under FRCP 15. (a)(2) the Court should freely give leave when justice so requires.

Plaintiff believes that it would be useful in this case to hold a conference to explore settlement, mediation or in the alternative to set a reasonable briefing schedule.

Respectfully submitted,

Lorna B. Goodman

CC (ECF): Hon. Steven M. Gold, M.J.

# EXHIBIT A

To ERIC SORENSON

**Retainer**

, Attorney

The undersigned, Client, residing at 419 Aderhold Rd Saxonburg PA 16056 hereby retains you to prosecute or adjust a claim for damages arising from—

personal injuries sustained by THE UNLAWFUL ABDUCTION AND SUBSEQUENT DETENTION OF ME AND MY HUSBAND

loss of services of

property damage to

on FEBRUARY 14, 19 87 through the negligence of INTENTIONAL ACTS THE GOVERNMENT OF LIBYA

or other persons.

The Client hereby gives you the exclusive right to take all legal steps to enforce this claim through trial and appeal. The attorney shall have the right but not the obligation to represent the client on appeal.

In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you and you are authorized to retain out of any moneys that may come into your hand by reason of the above claim:

(i) 30 percent on the first $250,000 of the sum recovered,
(ii) 25 percent on the next $250,000 of the sum recovered,
(iii) 20 percent on the next $500,000 of the sum recovered,
(iv) 15 percent on the next $250,000 of the sum recovered,
(v) 10 percent on any amount over $1,250,000 of the sum recovered; or,

Such percentage shall be computed on the net sum recovered after deducting from the amount recovered expenses and disbursements for expert testimony and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action. In computing the fee, the costs as taxed, including interest upon a judgment, shall be deemed part of the amount recovered. For the following or similar items there shall be no deduction in computing such percentages: liens, assignments or claims in favor of hospitals, for medical care and treatment by doctors and nurses, or self-insurers or insurance carriers.

In the event extraordinary services are required you may apply to the court for greater compensation pursuant to the Special Rules of the Appellate Division regulating the conduct of attorneys.

If the cause of action is settled by Client without the consent of Attorney, Client agrees to pay Attorney the above percentage of the full amount of the settlement for the benefit of Client, to whomever paid or whatever called. The attorney shall have, in the alternative, the option of seeking compensation on a quantum meruit basis to be determined by the court. In such circumstances the court would determine the fair value of the service. Attorney shall have, in addition, Attorney's taxable costs and disbursements. In the event the Client is represented on appeal by another attorney, Attorney shall have the option of seeking compensation on a quantum meruit basis to be determined by the court.

Client Sandra Simpson

Dated MAY 13, 19 99 (L.S.)
SANDRA SIMPSON

Witness Kiel James Sorenson (L.S.)

PI-8

# EXHIBIT B

## CONTINGENT FEE AGREEMENT

I, Sandra Jean Simpson have, since 1999, retained Eric C. Sorenson, Attorney at Law, to represent my interests for the purpose of recovery of damages arising out of the abduction and confinement of myself and my late husband, Dr. Mostafa Karim which occurred in 1987-1988 in the Country of Libya. I hereby agree to have Eric C. Sorenson continue to represent the interests of myself and the Estate of Mostafa Karim in these same matters.

I agree to pay Eric Sorenson 33 1/3% of the net of all sums recovered in judgment or settlement of these claims.

I agree to pay my pro-rata share (66 2/3%) of all reasonable expenses that have been incurred to date and any future expenses provided that for those expenses that may exceed $500, I am informed in advance of such expenses and I deem that they are reasonable. Expenses may include legal service fees, expert witness fees, doctors' reports, medical records, printing, postage, transportation other necessary court and office costs.

If I am not able to pay such expense at the time they are incurred and my attorney agrees to pay for these expenses, I agree to enter into a separate contract whereby I would pledge to reimburse him for my portion of such expense as soon as I am able.

If no recovery on my behalf is made, I am not liable for attorney fees to my attorney, but will agree to pay for 2/3rds of the actual expenses that have been incurred. If I terminate my attorney before a judgment or settlement that, in fact, does occur, I understand I will be liable for all his expenses and a reasonable fee for his services.

My attorney agrees to send me copies of all documents filed in my case, all correspondence, and any and all other printed materials for my personal file. My attorney will also keep a copy of all information for his file. When my attorney has completed all the legal work necessary for my case, my attorney will close his file and return all my original documents to me.

My attorney agrees to provide conscientious, competent, and diligent services, and I agree to cooperate with my attorney and others working on my case by keeping appointments, appearing for depositions, producing documents, attending special court appearances, and making payments as agreed. This agreement supersedes all other agreements between Eric Sorenson and Sandra Simpson.

SIGNED _[signature]_ DATED: May 11, 2009
Sandra Jean Simpson

SIGNED _[signature]_ DATED: May 14, 2009
Eric C. Sorenson

WITNESSED _[signature]_ DATED: May 11, 2009
K.J. Sorenson