UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
Eric C. Sorenson                                             :
                                                             :
                              Plaintiff,                     :   **MEMORANDUM DECISION AND**
                                                             :   **ORDER**
              - against –                                    :
                                                             :
                                                             :   15 Civ. 4614 (AMD) (ST)
Sandra Simpson,                                              :
                                                             :
                              Defendant.                     :
                                                             :
------------------------------------------------------------ X

ANN M. DONNELLY, District Judge.

## INTRODUCTION

The plaintiff, Eric Sorenson, a New York attorney, seeks attorney's fees and expenses from the defendant, Sandra Simpson, a former client and resident of Pennsylvania. He filed this lawsuit on August 6, 2015, pursuant to 28 U.S.C. § 1332, based on the diversity of the parties and an amount in controversy that exceeds $75,000. (Am. Compl., ECF 8 ¶ 7.) He asserts causes of action for breach of a retainer agreement and unjust enrichment. (*Id.* ¶¶ 37-47.) The defendant moves to dismiss the complaint under Rule 12(b)(6), for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12.  For the reasons that follow, the defendant's motion to dismiss is granted in part and denied in part. The plaintiff's breach of contract claim is dismissed.

1

# FACTUAL AND PROCEDURAL HISTORY[1]

First Retainer Agreement: The Federal Court Case

In 1987, the defendant and her now-deceased husband, Dr. Mustafa Karim, were held hostage by the Libyan government for three months and nine months, respectively. (Am. Compl. ¶ 1.) After Dr. Karim's death in 1993, the defendant married the plaintiff's brother. (*Id.*) In May of 1999, she and the plaintiff executed a retainer agreement, pursuant to which he would represent her and her late husband's estate in their suit against the Socialist People's Libyan Arab Jamahiriya ("Libya"). (*Id.* ¶ 1; *see also id.* ¶¶ 10, 31.)

Between 1999 and 2011, the plaintiff pursued the defendant's claims in federal court. According to him, he drafted the defendant's initial complaint against Libya, which she filed *pro se* in the District Court for the District of Columbia in July of 2000. (*Id.* ¶¶ 2, 11.) Nearly a year later, on June 25, 2001, he filed an appearance as the defendant's counsel. (*Id.* ¶ 12.) In the years that followed, he opposed Libya's multiple motions to dismiss the complaint, and he represented the defendant throughout Libya's appeals to the United States Court of Appeals for the District of Columbia. (*Id.* ¶¶ 13–25.)

In August of 2008, pursuant to a "Claims Settlement Agreement between the United States and Libya," the Congress passed the Libyan Claims Resolution Act ("LCRA"), Pub. L. No. 110-301, 122 Stat. 2999 (2008). (*Id.* ¶ 22.) The LCRA empowered the Foreign Claims Settlement Commission ("FCSC") to hear pending claims—that is, claims that were live at the time of the LCRA's passage—against Libya. (*Id.* ¶¶ 2, 22-23.) In order to pursue a claim with the FCSC, the defendant was required to terminate her federal court case. (*Id.* ¶ 24.) She signed a stipulation of dismissal, which the court approved on November 19, 2008. (*Id.* ¶ 25.)

---

[1] For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

2

Second Agreement: The FCSC

On May 11, 2009, the parties signed a new retainer agreement, which "superseded" the first. (*Id.* ¶ 31; Def. Mot. Dismiss, ECF 30, Ex. 2.) In relevant part, the agreement provided that the defendant would pay the plaintiff a contingency fee of 33⅓ percent of any judgment or, in the alternative: "[i]f I (Simpson) terminate my attorney before a judgment or settlement, that, in fact, does occur, I understand I will be liable for all his expenses and a reasonable fee for his services." (Def. Mot. Dismiss, ECF 30, Ex. 1.)

In July of 2009, the plaintiff filed six claims on behalf of the defendant and her deceased husband.[2] (Am. Compl. ¶ 26.) Between 2009 and 2011, the plaintiff claims that he hired experts and collected "documentary evidence" for the defendant's case. (*Id.* ¶ 27.) During this time, the plaintiff's brother and the defendant became estranged. (*Id.* ¶ 3.)[3] In July of 2011, two weeks after the plaintiff filed a brief regarding the defendant's claim, the FCSC notified him that the defendant had discharged him from the case and retained the law firm Winston & Strawn as legal counsel. (*Id.* ¶¶ 28, 30.)

On February 15, 2013, the FCSC awarded the defendant a $1,000,000 judgment for her claim. (*Id.* ¶ 29.) According to the plaintiff, "[t]he award was based almost solely on arguments created by [the plaintiff], as well as numerous documents he had discovered and submitted to the FCSC on [the defendant's] behalf." (*Id.*) The defendant paid Winston & Strawn $100,000 in legal fees. (*Id.* ¶ 30.) She did not pay the plaintiff. (*Id.* ¶ 3.)

---

[2] The defendant's late husband's claims were denied because he "was not a United States citizen at the time of injury." (Pl. Opp. Br., ECF 31, at 3, n.2.)
[3] The defendant filed for divorce in 2011, and those proceedings are pending. (Def. Mot. Dismiss, ECF 30, Ex. 2 at 6, n.1.)

3

The plaintiff asserts that he "performed hundreds of hours of uncompensated legal work" and incurred $35,095 in expenses. (*Id.* ¶¶ 32-33.) In April of 2013, he served the defendant with a notice of intent to file a lien. (*Id.* ¶ 35.)

The State Court Proceedings Against Winston & Strawn

On August 6, 2015, the same day the plaintiff filed the instant case before the undersigned, (ECF 1) he filed a charging lien against Winston & Strawn in state court. *See Sorenson v. Winston & Strawn*, Index No. 158124/2015 (Supreme Court, New York County). Through that lien, the plaintiff sought to recover a percentage of Winston & Strawn's $100,000 legal fee.

On June 9, 2016, New York Supreme Court Justice Richard Reed granted Winston & Strawn's motion to dismiss the state court complaint on the ground that the 2009 retainer agreement, which provided that the defendant would pay the plaintiff a contingency fee of 33 1/3 percent, was void and unenforceable because it violated the International Claims Settlement Act of 1949. (Pl. Opp. Br., Ex. D, at 18-20.) The Act, which governs the FCSC, states:

> No remuneration on account of services rendered on behalf of any claimant in connection with any claim filed with the Commission under this subchapter shall exceed 10 per centum of the total amount paid pursuant to any award certified under the provisions of this subchapter on account of such claim. Any agreement to the contrary shall be unlawful and void. Whoever, in the United States or elsewhere, demands or receives, on account of services so rendered, any remuneration in excess of the maximum permitted by this section, shall be fined not more than $5,000 or imprisoned not more than twelve months, or both.

22 U.S.C. § 1623 (f). Thus, even though the plaintiff's charging lien sought a percentage of Winston & Strawn's legal fees—which were within the statutorily-authorized amount—Justice Reed found that the plaintiff could not recover on the basis of an illegal contract. (Pl. Opp. Br., Ex. D, at 18-20.) The judge also dismissed the plaintiff's unjust enrichment claim as duplicative

4

of the contractual claim, and because the plaintiff's "unclean hands" precluded his recovery. (*Id.* at 19.)

The Instant Proceedings

On January 25, 2016, the plaintiff filed an amended complaint "seeking 'a reasonable fee'...for his legal services and expenses rendered in the D.C. Federal Courts from 1999-2008." (Am. Compl. ¶ 4.) He claims that he is entitled to damages in the amount of $500,000 for breach of the retainer agreement and unjust enrichment. (*Id.* ¶¶ 37-47.)

On August 31, 2016, the defendant filed a motion to dismiss the complaint, arguing that the 2009 retainer agreement is unlawful and void, that the plaintiff has unclean hands, which bar recovery for unjust enrichment, and that his claims are time-barred. (Def. Mot. Dismiss, ECF 30, Ex. 2 at 7.)

## DISCUSSION

I.  Standard of Review

In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Winfield v. Babylon Beauty Sch. of Smithtown Inc.*, 89 F. Supp. 3d 556, 561 (E.D.N.Y. 2015) (quoting *Twombly*, 550 U.S., at 570) (internal quotation marks and alterations omitted).

In his complaint, the plaintiff refers to two contracts: the parties' 1999 retainer agreement, and their 2009 retainer agreement, which superseded the first. (Am. Compl. ¶¶ 10,

5

31-41.) Because he incorporates these documents by reference into the complaint,[4] I may consider them for the purpose of evaluating the defendant's motions to dismiss. *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007) (citation omitted) (courts considering motions to dismiss may look to extraneous documents incorporated by reference into the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (courts considering motions to dismiss are not necessarily limited to the face of the complaint when "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls.").

    II.    <u>Statute of Limitations</u>

In New York, breach of contract and unjust enrichment claims must be brought within six years. N.Y. C.P.L.R. § 213. The plaintiff's claims are based on his efforts to represent the defendant in federal court from 1999 to 2008. (Def. Mot. Dismiss at 18; Am Compl. ¶¶ 4, 43-45.) Generally, a "cause of action for quantum meruit begins to run when the final service has been performed." *GSGSB, Inc. v. N.Y. Yankees*, 862 F. Supp. 1160, 1171 (S.D.N.Y. 1994) (citations omitted). The Second Circuit has recognized, however, that "an attorney…need not sue until the job is over; that is, until he has been discharged, or otherwise learns that he will not be required to do anything more." *Potts v. Vill. of Haverstraw*, 110 F.2d 58, 60 (2d Cir. 1940).

I find that the plaintiff's claims are not time-barred as a matter of law. The plaintiff filed the instant complaint in August of 2015. While he seeks compensation for work that he completed in 2008, he was not discharged until 2011. The 2009 agreement with the defendant provided that the plaintiff would be entitled to a contingency fee if the defendant prevailed in her claim or, alternatively, that she would pay him expenses and "a reasonable fee for his services" if

---

[4] The plaintiff includes the contracts with his brief opposing the defendant's motion. (ECF 31 at 25-26.)

6

she discharged him and subsequently obtained a judgment. (Def. Mot. Dismiss, Ex. 1 at 3.) The agreement was not explicitly limited to claims brought before the FCSC. Thus, there is a factual question as to whether the plaintiff knew he would not be "required to do anything more" in federal court, or whether the 2009 agreement was intended to encompass future federal litigation in addition to the pursuit of the defendant's claims in the FCSC.

Accordingly, I deny the defendant's motion to dismiss the plaintiff's claims as time-barred.

### III. The 2009 Retainer Agreement

Illegal contracts are not enforceable. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 580–81 (2d Cir. 2006) (citing New York cases). "If less than all of an agreement is unenforceable [on grounds of public policy], a court may…enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreements is unenforceable is not an essential part of the agreed exchange." *Restatement (Second) of Contracts* § 184(1) (1981); *accord Beth Israel Med. Ctr.*, 448 F.3d at 581 (citing *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (N.Y. 1999); *Triggs v. Triggs*, 46 N.Y.2d 305, 413 N.Y.S.2d 325, 385 N.E.2d 1254 (N.Y. 1978); *Ferro v. Bologna*, 31 N.Y.2d 30, 334 N.Y.S.2d 856, 286 N.E.2d 244 (N.Y. 1972)); *see also Katz v. Zuckermann*, 119 A.D.2d 732, 733, 501 N.Y.S.2d 144, 145 (1986) (enforcing a contract that was "prohibited by statute…and [was] not criminal in nature" where "the plaintiffs, as nonprofessionals, were less culpable than the defendant, at whom the [statute was] directed."). Nevertheless, "a party to an illegal contract cannot ask a court of law to help him carry out his illegal object." *Stone v. Freeman*, 298 N.Y. 268, 271, 82 N.E.2d 571 (N.Y. 1948) (citations

7

omitted)); *accord United Calendar Mfg. Corp. v. Huang*, 94 A.D.2d 176, 180, 463 N.Y.S.2d 497 (1983)).

The parties do not dispute that the 2009 retainer agreement provided for attorneys' fees in excess of the applicable statutory cap, nor do they dispute that 22 U.S.C. § 1623 (f) imposes criminal penalties for violations. 22 U.S.C. § 1623 (f) ("Whoever, in the United States or elsewhere, demands or receives, on account of services so rendered, any remuneration in excess of the maximum permitted by this section, shall be fined not more than $5,000 or imprisoned not more than twelve months, or both."). The plaintiff asserts, nevertheless, that his contract claim should not be dismissed for the following reasons: he seeks to enforce a legal and severable clause of the contract, discovery is required to determine the intent of the parties, and 22 U.S.C. § 1623 (f) does not preclude a party from seeking a portion of an FCSC claim in a subsequent federal action. These arguments are unavailing.

   a.  Severability and the Intent of the Parties

The plaintiff asserts that he does not seek to enforce the contingency fee provision of the 2009 contract. Instead, he claims that he may recover under the reasonable fee clause of the contract, which he maintains is severable.

According to the plaintiff, the severability of the reasonable fees clause requires the resolution of factual questions, including the parties' intentions. (Pl. Opp. Br. at 10-11.) The contract provided for an alternative fee structure in the event of the plaintiff's discharge which, the plaintiff contends, evinces the parties' intent to sever the contingent fee clause from the reasonable fee clause. Moreover, the plaintiff contends that the contingent fee clause "was not intended to circumvent the fee regulations covering proceedings at the FCSC;" instead, it was meant to compensate him for his previous work on her behalf. (*Id.* at 6.) Additionally, he argues

8

several other attorneys who represented claimants in front of the FCSC received fees in excess of the statutory cap. In light of the foregoing, he asserts that discovery is necessary to determine whether any portion of the contract might be interpreted to allow for recovery notwithstanding the contingency fee clause.

The plaintiff's argument is defeated by the unambiguous language of 22 U.S.C. § 1623 (f), which provides that "[n]o remuneration on account of services rendered on behalf of any claimant in connection with any [FCSC] claim" may exceed 10 percent of an FCSC award, and that "[a]ny agreement to the contrary shall be unlawful and void." 22 U.S.C. § 1623 (f). Thus, the statute does not require proof of intent, nor does it allow for severability of improper clauses; rather, it calls for the invalidation of "[a]ny agreement" that violates its terms. Accordingly, I find that the plaintiff cannot sever the reasonable fee clause from the rest of the contract.

  b. The Plaintiff's Interpretation of 22 U.S.C. § 1632(f)

Alternatively, the plaintiff contends that the 10 percent cap imposed by 22 U.S.C. § 1632(f) only prohibits fees for claims filed with the Commission, and therefore does not "block a fee sought in a federal court action." (Pl. Opp. Br. at 8.) He relies on *Pan Am Flight 73 Liaison Group v. Davé*, 711 F. Supp. 2d 13 (D.D.C. 2010), *aff'd*, 639 F.3d 1102 (D.C. Cir. 2011), in which survivors of a hijacking entered into a joint prosecution agreement providing that they would split any recovery. The Davés received an FCSC award, but did not split it with the other survivors. *Pan Am Flight 73 Liaison Grp.*, 711 F. Supp. 2d at 17. The plaintiffs, a liaison group acting on behalf of the other survivors, sought to compel arbitration pursuant to the joint prosecution agreement. The Davés claimed that under LCRA § 4(b)(1)(A), their award was immune from suit or attachment, and, thus, that federal law "prohibit[ted] an arbitration having that possible outcome." *Id.* Judge John Bates, of the United States District Court for the District

of Columbia, held that the Davés were not relieved of their contractual agreement to enter arbitration, and that the alternative outcome would yield the "absurd result" that "individuals who have obtained claims settlement funds would forever have a cache of money untouchable in any court proceeding for any purpose." *Id.* at 29. As an example, he noted that if the immunity provision were perpetual, then "a creditor in a bankruptcy proceeding—a third party—would be unable to access any funds traceable to a Foreign Claims Settlement Commission award." *Id.*

The *Pan Am* reasoning is inapplicable here. Unlike the immunity provision at issue in that case, 22 U.S.C. § 1632(f) imposes a specific cap on attorneys' fees for claims brought in front of the FCSC. The defendant does not argue that her award is immune from a lawsuit of any kind; she merely contends that the plaintiff cannot use the federal courts to obtain a sum of money that he was explicitly precluded from seeking in front of the Commission. If the plaintiff's reading of the statute were correct, the federal fee cap would have no teeth at all: a claimant's attorney would only have to wait until a judgment was awarded, and then bring a claim in federal court for whatever fee he thought was fair.

I find that the 2009 contract violated federal law and that the plaintiff cannot use the courts to enforce an illegal agreement. Thus, I grant the defendant's motion to dismiss the plaintiff's breach of contract claim.

IV.     Unjust Enrichment and Quantum Meruit

The plaintiff also asserts a claim of unjust enrichment and quantum meruit. "Under New York law, a court analyzes quantum-meruit and unjust-enrichment claims together as a single quasi-contract claim." *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 504, n.1 (E.D.N.Y. 2009) (citing *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)). Accordingly, although the plaintiff did not explicitly assert

10

entitlement to quantum meruit in his complaint, his cause of action for unjust enrichment encompasses both claims.

To prevail on a claim of quantum meruit, a plaintiff must establish "'(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Liddle & Robinson, LLP v. Garrett*, 720 F. Supp. 2d 417, 422 (S.D.N.Y. 2010) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009)); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.") (quoting *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000)).

These quasi-contract claims are based on an "obligation the law creates in the absence of any agreement." *Beth Israel Med. Ctr.*, 448 F.3d at 586-87 (quoting *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (N.Y. 2005) (alterations omitted)). Accordingly, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). An unenforceable contract, however, does not preclude recovery for unjust enrichment or quantum meruit. *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 504 (E.D.N.Y. 2009) (citing *Rule v. Brine Inc.*, 85 F.3d 1002, 1011, 1014 (2d Cir. 1996) (citation omitted); *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 200 (S.D.N.Y. 2006) (citing *Integral Control Sys. Corp. v. Consol. Edison Co.*, 990 F.Supp. 295, 303 (S.D.N.Y. 1998)).

Several New York courts have found that an attorney may be entitled to quasi-contractual remedies where his retainer agreement is deemed unenforceable. In *Matter of Cooperman*, 83 N.Y.2d 465, 633 N.E.2d 1069 (1994), the New York Court of Appeals held that, although an attorney's "nonrefundable retainer agreement" was "unenforceable" and subjected him to professional sanctions, "quantum meruit payment for services actually rendered" were still "available and appropriate." 83 N.Y.2d 465, 470, 633 N.E.2d at 1073; *see also Wong v. Michael Kennedy, P.C.*, 853 F. Supp. 73, 81 (E.D.N.Y. 1994) (holding that although retainer agreement was "void as a matter of law…counsel [wa]s not precluded from recovering payment in quantum meruit for the reasonable value of services actually rendered.") (citing *Cooper*, 83 N.Y.2d at 472, 611 N.Y.S.2d at 468, 633 N.E.2d at 1072); *Burton v. Defren*, 14 F. App'x 116, 119 (2d Cir. 2001) ("Even voided contracts can give rise to *quantum meruit* recovery.") (citations omitted).[5] As discussed above, the parties' 2009 contract was neither valid nor enforceable; thus the existence of the contract does not defeat the plaintiff's quasi-contractual claims.

The defendant argues that the plaintiff's unjust enrichment claim is barred by the doctrine of unclean hands; that doctrine precludes equitable relief if (1) "the plaintiff is guilty of immoral, unconscionable conduct directly related to the subject matter in litigation; (2)…the conduct was relied upon by the defendant; and (3) that the defendant was injured thereby." *Lia v. Saporito*, 909 F. Supp. 2d 149, 174 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013). Assuming this doctrine applies to a claim for quantum meruit,[6] I find that the plaintiff's entitlement to such relief turns on factual questions that cannot be resolved as a matter of law. Accordingly, I deny

---

[5] The defendant attempts to distinguish these cases, asserting that the plaintiff's retainer agreement was subject to criminal penalties, not just professional sanctions. It is for the factfinder to determine the "just and equitable" result under the circumstances. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

[6] *See Dayton Superior Corp. v. Marjam Supply Co.*, No. 07 CV 5215 DRH WDW, 2011 WL 710450, at *19 (E.D.N.Y. Feb. 22, 2011) (doctrine of unclean hands inapplicable to quasi-contractual claims).

the defendant's motion to dismiss the cause of action for unjust enrichment and quantum meruit.

## CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss is granted in part and denied in part. The plaintiff's claim for breach of contract is dismissed.

**SO ORDERED.**

                                                s/Ann M. Donnelly

                                                Ann M. Donnelly
                                                United States District Judge

Dated: Brooklyn, New York
        May 1, 2017