419 Aderhold Rd
Saxonburg, PA  16056

Hon.  A.M. Donnelly, U.S. District Judge
United States District Court, EDNY
225 Cadman Plaza,
Brooklyn, NY  11201

Dear Judge Donnelly,

Re: Sorenson v. Simpson     15 cv 4614 (AMD/ST)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

☆ AUG 2 8 2017 ☆

BROOKLYN OFFICE

I am the Pro Se Defendant in the above-captioned case.  I write to respectfully request that the court reconsider its decisions dated August 7, and May 2, 2017. denying my motion to dismiss plaintiff's Unjust Enrichment Claim.   I move for reconsideration due to a recently discovered decision from the New York Supreme Court that bars Plaintiff's clam pursuant to principles of res judicata and collateral estopple.  Alternatively, I request the Court's permission to file a motion to dismiss pursuant to Federal Rules of Civil Procedure 12 (b) (1) for lack of subject matter jurisdiction.

On or about August 16, 2016, I learned that the New York Supreme Court had rendered a final decision in Sorenson v. Winston & Strawn (index no. 158124/2015) on May 3, 2017.  I write to draw Your Honor's attention to this decision, of which I do not believe the court was aware at the tie of its August 7, 2017 decision.  Attached as Exhibits A and B are copies of the court's decision and final order, in Sorenson v. Winston & Strawn LLP.  Also included as Exhibit  C is the docket from the case of Sorenson v. Winston & Strawn  LLP so that the court may more easily follow the proceedings.

In this case, the state Supreme court dismissed Plaintiff Sorenson's claim due to the doctrine of "Unclean Hands," barred him from recovering on his "Unjust Enrichment" claim.  Judge Reed stated:

> The claim for unjust enrichment is also without basis under the law.  Here are the lines.  There is not inducement and, importantly, there is no sense of an equity, which is the issue for unjust enrichment because here there is unclean hands where we have a violation of federal statute in the making of the very retainer agreement.
>
> In fact, we have a retainer agreement and the retainer agreement actually covers— even as unlawful as it is –it was clear that the retainer agreement was intended to recover the entirety of the transaction.  It leaves actually a motion of unjust enrichment goes by the wayside because there is an applicable contract, unlawful as it may have been.  Ex. A. pg 19, 10-23.

Almost exactly one year later, Judge Reed gave a final order as the "Plaintiff fails to offer matters of fact or law allegedly over looked or misapprehended by the court in determining the underlying motion........"   Ex. B. pg. 1.

Plaintiff Sorenson is the Plaintiff in both the state and federal courts.  Defendant Simpson is not a party to the Sorenson v. Winston & Strawn case, but has privity because Winston & Strawn were representing Simpson at the time of the cause of action and the contract under dispute was signed by Sorenson and Simpson.

There are two factors at work in the court's ability to resolve this issue, Res Judicata and Collateral Estoppel.

Res Judicata example:
Federal courts have traditionally adhered to the related doctrines of *res judicata* (claim preclusion) and *collateral estoppel* (issue preclusion). Under RJ, a final judgment on the merits of an action precludes the parties . . . from re-litigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first cause. As this court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication.
Allan v. McCurry 449 U.S 90, 94, 101, S Ct. 411  (1980)

A very clear example of res judicata appears in Cromwell v. County of Sac, 94 U.S. 352, 24 L.Ed. 195 (1876).  Speaking about res judicata, the Court said:

> The judgement if rendered upon the merits, constitutes as absolute bar to a subsequent action.  It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Id. at 352 L.Ed  at 197.

Collateral Estoppel example:
"Once a court has decided an issue of fact or law, necessary to its judgement, that decision...precludes relitigating of the issue in a suit or a suit of a different cause of action involving a party to the first case."  San Remo Hotel v. San Francisco 545 U.S. 323 92205) fn 16.

Two more recent court decisions illustrate how collateral estoppel can be deployed by a party to resolve a lawsuit favorably and efficiently, often without the expense of fully litigating

disputed issues all the way to judgment. In November 2013, a Nevada federal court held in Rainero v. Archon Corp., No. 07-cv-01553, 2013 WL 5965 (D. Nev. Nov.7, 2013), that a shareholder could rely on collateral estopple to prevent a corporation from disputing the correct redemption price for preferred shares where earlier lawsuits, to which the shareholder was not a party, resolved this issue against the corporation in summary judgment decisions.

Similarly, in September of 2013, a New Jersey federal court held in Fresh Prepared Foods, Inc.

v. Farm Ridge Foods LLC, NO. 10-6310, 2013 WL 4804816 (D.N.J. Sept. 9, 2013), that a plaintiff could rely on collateral estopple to prevent a defendant in a trademark infringement suit from arguing that it was the proper owner of the disputed trademarks where the defendant had objected to the sale of the trademarked property in an earlier bankruptcy proceeding to which the plaintiff was not a party.

Defendant is asking the court to reconsider its decision of August 7, 2017 and May 2, 2017 based on the doctrines of Res Judicata and Collateral Estoppel, because of the recently discovered decision in Sorenson v. Winston & Strawn. These two doctrines are applicable in this case as the issues and parties are the same in Sorenson v. Winston & Strawn and Sorenson v. Simpson. Although Simpson was not a party, per se, in Sorenson v. Winston & Strawn, she had privity as Winston was representing her and the contract at issue is the exact same contract (2009 retainer agreement), and same issue, Unjust Enrichment, As the issues have already been litigated in the Supreme Court of New York.

Sorenson has lost his Unjust Enrichment Claim, in a final decision, in the Supreme Court of New York. According the doctrines of Res Judicata and Collateral Estopple, the matter should rest as the claim has been adjudicated.


Respectfully submitted,

Sandra Simpson
419 Aderhold Rd
Saxonburg, PA 16056
724-352-9206
simpsonfuture@gmail.com


Dated: Aug. 28, 2017

*Exhibit A*

FILED: NEW YORK COUNTY CLERK 06/10/2016 03:15 PM   INDEX NO. 158124/2015

NYSCEF DOC. NO. 19   RECEIVED NYSCEF: 06/10/2016

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   HON. ROBERT R. REED   PART **43**

J.S.C. *Justice*

| | |
|---|---|
| Index Number : 158124/2015 | INDEX NO. _____ |
| SORENSON, ERIC | MOTION DATE _____ |
| vs | MOTION SEQ. NO. _____ |
| WINSTON & STRAWN, LLP | |
| Sequence Number : 001 | |
| DISMISS | |

The following papers, numbered 1 to _____ , were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____ |
| Answering Affidavits — Exhibits _____ | No(s). _____ |
| Replying Affidavits _____ | No(s). _____ |

Upon the foregoing papers, it is ordered that this motion is

decided in accordance with this Court's decision on the record. Defendant is directed to obtain a copy of the transcript of the proceedings, which shall be presented to this Court for "so ordering" within 14 days of entry of this order.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: **6/9/16** _____   _____, J.S.C.

| | | |
|---|---|---|
| CHECK ONE: .................................................... | ☒ CASE DISPOSED | ☐ NON-FINAL DISPOSITION |
| CHECK AS APPROPRIATE: ...........................MOTION IS: | ☒ GRANTED   ☐ DENIED | ☐ GRANTED IN PART   ☐ OTHER |
| CHECK IF APPROPRIATE: .................................... | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| | ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

1 of 1

FILED: NEW YORK COUNTY CLERK 06/22/2016 09:43 AM   INDEX NO. 158124/2015
NYSCEF DOC. NO. 20                                    RECEIVED NYSCEF: 06/22/2016

```
RECEIVED
JUN 17 2016
PART 43
NYS SUPREME COURT - CIVIL
```

1

2   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK - CIVIL TERM - PART 43
3   -------------------------------------------------X

4   ERIC SORENSON,

5                        Plaintiff,

6                   -against-

7   WINSTON & STRAWN, LLP,

8

9                        Defendants.
    -------------------------------------------------X
10  Index # 158124/2015          Proceedings

11                               111 Centre Street
                                 New York, New York
                                 June 9, 2016
12

13  B E F O R E:

14          HONORABLE ROBERT R. REED,
                     Justice.
15

16

17  A P P E A R A N C E S:

18  LAW OFFICE OF LORNA B. GOODMAN
    551 Madison Avenue
    New York, New York 10022
19       BY:  LORNA B. GOODMAN, ESQ.
             Attorney for Plaintiff
20

21  WINSTON & STRAWN, LLP
    200 Park Avenue
    New York, New York 10166
22       BY:  JOHN M. AERNI, ESQ.
             IAN T. HAMPTON, ESQ.
23           Attorneys for Defendant

24

25

26                  DEBORAH A. ROTHROCK, RPR
                    Official Court Reporter

2

1        -Proceedings-

2        THE COURT:  Appearances for the record.

3        MS. GOODMAN:  Good morning, your Honor.  My name is

4    Lorna Goodman and I represent Eric Sorenson, Plaintiff in

5    this case.

6        MR. AERNI:  Good afternoon, your Honor.  Winston &

7    Strawn, LLP, John Aerni and my colleague, Ian Hampton.

8        MR. HAMPTON:  Good afternoon.

9        THE COURT:  Good afternoon.

10       Movant.

11       MR. AERNI:  Thank you, your Honor.

12       Your Honor, this is a motion to dismiss the amended

13   complaint on the grounds that the claims in the amended

14   complaint are illegally insufficient, they fail as a matter

15   of law.

16       The crux of this case is that the attorney, Mr.

17   Sorenson was representing a client, he was discharged,

18   ultimately a recovery was had by the client and Mr. Sorenson

19   is claiming there is a charging lien against us, the

20   succeeding attorneys.

21       The key to this case, your Honor, is a federal

22   statute that makes clear that Mr. Sorenson's retainer

23   agreement is unlawful and void and that is the key to the

24   whole matter.

25       And I guess the best way to start with the argument

26   is to take us to the key moment in time which is May of

3

1                           -Proceedings-

2        2009, when the retainer agreement at issue here was signed.

3        At that time Mr. Sorenson --before that Mr. Sorenson had

4        been representing the client in federal court.  He had

5        brought claims for the client because the client had been

6        detained in Libya and was suing the Libyan government.

7                    THE COURT:  Right.

8                    MR. AERNI:  The federal statutes were passed and

9        made it clear that those claims, if they were to be

10       successful, had to be brought --they could not be brought in

11       federal court anymore; they had to be brought before The

12       Foreign Claims Settlement Commission -- and I will just call

13       that The Commission for short because it is a big mouthful.

14                   So, as of May, 2009, the federal claims had already

15       been dismissed.  Mr. Sorenson knew the claims had to be

16       brought before The Commission.  He brought them a month or

17       two later.

18                   In May of 2009 he had his client sign a new

19       retainer agreement that said that --provided for 33 and a

20       third percent contingency fee recovery for the claims he was

21       about to bring in front of The Commission and that is the

22       key to this.  Because at that time there was a federal

23       statute that governed those claims being brought before The

24       Commission.  That statute existed then, it still exists

25       today.  And if ever Congress drafted a statute to say we

26       mean what we say, it was Statute 22 USC 1623(f) and the

4

1              -Proceedings-

2    statute could not have been clearer.

3              It said to Mr. Sorenson -- and another attorneys

4    bringing claims before The Commission that the most you

5    could ever, on any recovery before this Commission, there's

6    an absolute limitation of a ten percent of the client's

7    recovery is all you could ask for, that is our total

8    absolute limit.  You cannot ask for expenses beyond that.

9    Ten percent is the limit.  And, by the way, we mean it,

10   counsel.

11             If you have an agreement which asks for more than

12   ten percent, that agreement is unlawful and void.  And in

13   case you still haven't gotten it, counsel, if you ever ask

14   for more than that ten percent, if you ever demand it, if

15   you ever receive it, ever receive more than ten percent,

16   counsel, you have committed a crime.  I don't know how else

17   Congress could have made its intent clearer.

18             Nonetheless, in May of 2009, Mr. Sorenson, knowing

19   he had to bring claims in front of The Commission, had his

20   client sign this unlawful and void retainer agreement.  And

21   federal law makes it very clear that at that moment in time,

22   before the ink ever dried on that retainer agreement, that

23   was an unenforceable, unlawful and void retainer agreement.

24   It was a nullity.  It was a nothing.  It was as if it never

25   happened.  That is the retainer agreement on which Mr.

26   Sorenson, in this case, seeks to enforce a charging lien

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

5

1                          -Proceedings-

2       against us.  The law makes clear he cannot do that.

3               There has been no dispute in the papers that to

4       enforce a charging lien there has to be an enforceable

5       retainer agreement.  And the federal statute here makes

6       clear that there isn't.

7               And in their opposition papers Mr. Sorenson,

8       essentially says, well, those federal statutes don't really

9       apply to us.  You could server them, Judge.  Look at general

10      principles of New York State Contract Law and it says you

11      could ignore that federal statute and just server that

12      illegal provision.  There are two problems with that, your

13      Honor, or many problems but they break into two categories;

14      one, is that is totally wrong and two, is that is totally

15      irrelevant.

16              It is totally irrelevant because New York State Law

17      on General Law of Contracts has no say here.  This is

18      federal law.  Federal law trumps whatever New York State

19      general contract principles are.  That is what the supremacy

20      clause is about; federal law controls here.

21              More importantly, whether you look at federal law

22      or New York State Law they both say the same thing.  They

23      say when a statute is a clear and says you know, if a

24      statute says this contract is void and illegal, you cannot

25      server that.  That is clear.  That is the end of the story.

26      If the contract is void and illegal.  It is void and

6

-Proceedings-

1
2      illegal.  It was a nullity and never existed in the first

3      place.  That is what federal law says and that is what state

4      law says.

5            THE COURT:  It exists as proof of a crime.

6            MR. AERNI:  There is that aspect to it, your Honor,

7      which is actually relevant to at least two of Mr. Sorenson's

8      claims.

9            In addition to the fact that the first claim he

10     can't seek to enforce a charging lien where there's not an

11     enforceable retainer agreement.  There's also the secondary,

12     totally independent argument, that that is a discharge for

13     cause.

14           Ms. Simpson, the client, is not here in this

15     proceeding.  But it doesn't matter whether or not she knew

16     that was the reason for the discharge; whether she knew

17     about that this criminal behavior or she didn't at the time

18     that she discharged Mr. Sorenson.  The law is that even if

19     she didn't learn that until later that still is a discharge

20     for cause and that is a second independent ground why Mr.

21     Sorenson cannot recover on any charging lien he's claiming

22     here.

23           And second, it goes to the second claim in Mr.

24     Sorenson's complaint, which is the one for unjust

25     enrichment.  Of course a defense for unjust enrichment is

26     unclean hands.  What could be more unclean hands than

7

1                          -Proceedings-

2      violating a federal statute which existed there in May of

3      2009.  And Mr. Sorenson, obviously, had a duty to look up

4      the law that governed the proceeds before The Commission.

5      We don't know if he looked it up and ignored the law or

6      whether he just didn't look up the law; it doesn't matter.

7      Either way that is a federal crime and he has unclean hands.

8                There are many other reasons for why the claim for

9      unjust enrichment should be denied.

10               New York Law is very clear, in situations like

11     this, in a situation where there is a discharged attorney

12     and a succeeding attorney.  The law couldn't be clearer that

13     it is not enough to say the succeeding attorney knew of the

14     discharged lawyer's existence and even benefited in some

15     form by that lawyer's work.  The law says that is not enough

16     in these situations, otherwise there would be unjust

17     enrichment claim in every case where there is a discharged

18     attorney and a succeeding attorney.  The law says no, that

19     is not sufficient.

20               The succeeding attorney has to either induce some

21     reliance on the part of the first lawyer or has to ask him

22     for some work, ask him to do some work.  But none of that

23     exists here.  Their own complaint acknowledges --in fact

24     they complain about the very thing that shows their claim

25     fails.  They claim that Winston never responded to Mr.

26     Sorenson, never returned his calls, didn't ask him to do

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

8

1                          -Proceedings-

2      anything, just ignored him.  That severs the link and means

3      there's no unjust enrichment claim under the clear New York

4      Law.  And the Gorelick case, again, involves in this court;

5      it involves the same kind of fact pattern here of a

6      discharged attorney and a succeeding attorney and this court

7      said, no, there's just no connection there.  There's no

8      connection sufficient for am unjust enrichment claim.

9           The third claim, the conversion claim, fails for

10     number of reasons as well that we have set forth in our

11     papers.  The foremost of which is this:  If this kind of

12     fact pattern here today was a conversion claim, then ever

13     case that ever comes before you is a converse claim.

14     Because what the Plaintiff Mr. Sorenson is saying is,

15     Winston & Strawn, you owe me some amount of money that is

16     not yet defined.  And that is, therefore, because you did

17     not give me some amount of money that is not yet defined,

18     that is a conversion.

19           Any claim that comes in front of you that is about

20     money would be conversion under that argument.  That is not

21     a conversion, your Honor.  A generalized claim saying you

22     owe me some money does not constitute a conversion.

23           THE COURT:  Let me hear from Ms. Goodman.

24           MS. GOODMAN:  Thank you, your Honor.

25           First I would like to say something about the

26     Plaintiff Eric Sorenson.

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

1          -Proceedings-

2          He works for the New York City Department of

3     Corrections.  Although he attended law school at night and

4     duly passed the New York Bar he has never practiced law

5     full-time.

6          He took this case to accommodate this brother --his

7     older brother and his sister-in-law, Sandra Simpson, after

8     failing to find other counsel for them.  He tried to find

9     someone else to take the case.  It was a very very hard

10    case.

11         The effort he put forth and the results are truly

12    astonishing.  A little like David and Goliath, he took on

13    the Government of Libya in the most distinguished Federal

14    Appellate Court in the country and achieved a singular

15    victory.

16         After fighting off three motions to dismiss in the

17    Federal District Court and successfully arguing twice in the

18    D.C. Circuit, he enabled Ms. Simpson to qualify for damages

19    for hostage taking at the Administrative Tribunal, The

20    Commission, as counsel mentioned, set up to compensate

21    victims of international terrorism.  This is especially

22    significant, as Ms. Simpson was not taken explicitly as a

23    hostage, which is a requirement for recovery under The

24    Foreign Sovereign Immunities Act.

25         For example, her release was not conditioned upon

26    any concessions by the United States Government.  Yet to

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

10

1                          -Proceedings-

2        overcome this Mr. Sorenson cited all kinds of documents,

3        including Libya's history of taking and releasing hostages,

4        a 1997 Department of Defense Intelligence Report, a State

5        Department Report entitled Patterns of Global Terrorism.

6                He ultimately convinced the D. C. Circuit that Ms.

7        Simpson's case could survive a motion to dismiss.

8                In this connection, I would urge your Honor to look

9        at 470 Fd3d 356, which would give you the idea of the

10       complexity and the difficulty that Mr. Sorenson was able to

11       overcome in Federal Court.

12               He did this all over a nine and-a-half year period,

13       funding it by himself, even borrowing money from a bank to

14       cover expenses.  He did it pursuant to two identical

15       contingency retainers; one for Ms. Simpson and one for the

16       Estate of her husband Dr. Mustafa Kareem.

17               Toward the end of the Federal court litigation

18       Sorenson and Simpson began to negotiate a single retainer

19       for both parties, as Simpson was now the sole heir of

20       Kareem.  That was the motivation behind doing a new retainer

21       agreement.  Because it was signed a year later doesn't mean

22       that the initial intention at the time was anything other

23       than to simplify the arrangement between them.

24               The revised retainer which made no -- the original

25       retainer made no mention of any specific case, or forum, or

26       time limit and was largely a continuation of the original

11

-Proceedings-

1
2   retainer but was now updated to reflect the fact that Ms.
3   Simpson was now heir to her husband's estate.
4           The revised retainer also explicitly superceded all
5   other agreements and set forth what would happen should Ms.
6   Simpson discharge Mr. Sorenson and go on to receive a
7   monetary judgment or settlement.  Should that occur, Ms.
8   Simpson agreed to pay Mr. Sorenson all expenses and a
9   reasonable fee for his services.
10          So this, in effect, is not a quantum meruit
11  situation but one in which the monetary value is calculated
12  in the same terms, expenses, and time spent.
13          Subsequent Ms. Simpson became estranged from Mr.
14  Sorenson's brother and without notice or explanation dropped
15  Mr. Sorenson as counsel and engaged Winston & Strawn to
16  continue the case and engaged Mr. Sorenson; it also happened
17  to be the same day that she served divorce papers on his
18  brother.  So they were getting divorced.
19          My client only found out about his discharge by
20  calling The Commission to check on something in a brief he
21  had recently filed with The Commission.  Winston & Strawn
22  did not give him notice, Sandra Simpson did not give him
23  notice and from then on he was in the dark.
24          Under the revised retainer, the only claim Mr.
25  Sorenson had, and still has today, is for the time and
26  expenses he put into Ms. Simpson and her late husband's

12

1          -Proceedings-

2    claim.  Gone are the contingency clauses of the earlier and

3    later retainer.  Gone are the provision for sharing of

4    expenses.  And gone was Mr. Sorenson's access to Ms.

5    Simpson.

6          To give you an idea of the probity of my client,

7    the minute he heard that she was represented by another

8    attorney he seized all communications with her.  In fact,

9    when he later sent a notice of charging lien, it was sent to

10   Mr. Braven of Winston & Strawn instead of directly to Ms.

11   Simpson.

12         Only after he learned that Ms. Simpson was no

13   longer a client of Winston & Strawn did he resume limited

14   communication with her.

15         At the time of his discharge Mr. Sorenson had filed

16   six claims at The Commission and submitted numerous

17   documents and briefs over a two and-a-half year period.  The

18   claim under which Ms. Simpson received a million dollars was

19   initially filed and supported by Sorenson.

20         In our papers we have included a list of all of the

21   documents prepared by Mr. Sorenson and submitted to The

22   Commission overtime; I will not go through this list but I

23   urge your Honor to peruse it and credit the obvious; the war

24   was based almost 100 percent on the arguments and documents

25   submitted by Eric Sorenson.

26         This is explicitly acknowledged in the two

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

13

1                             -Proceedings-

2       pertinent awards by The Commission when it lists the

3       documents relied upon and is also evident in the reasoning

4       behind the awards, the reasoning that was put forth by

5       Sorenson in the first place.  That is what this case is

6       about.

7                  Plaintiff is only asking for his fair share of the

8       ten percent fee received by Winston & Strawn.

9                  Admittedly, this Court will have to hold further

10      hearings to determine the precise amount or I would urge

11      sending to it a Referee to determine the percentage of fee

12      to which Sorenson is entitled.

13                 In any case, it will be less than ten percent.  He

14      never demanded more than ten percent based on the claim

15      before The Commission.  So, we have to realize --

16                 THE COURT:  What is the document that you were

17      saying under which he seeks compensation?

18                 MS. GOODMAN:  It is called a contingent fee

19      agreement and it is in my brief, I believe, it's Exhibit 2.

20                 THE COURT:  Exhibit 2.  That is the same one that

21      they have talked about which is the May 11th, 2009 and Ms.

22      Simpson agrees to pay Eric Sorenson 33 and a third percent

23      of the net of all sums.

24                 MS. GOODMAN:  Right.

25                 If you go down that it says in the fifth paragraph,

26      it says:

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

14

1                            -Proceedings-

2           If I terminate my attorney before a judgment or

3    settlement --that in fact does occur and that happened -- I

4    understand I will be liable for all expenses and a

5    reasonable fee for his services.

6           THE COURT:  I understand.

7           MS. GOODMAN:  That is what he's asking for, a

8    reasonable fee for his services.

9           THE COURT:  He's asking for a fee from Winston &

10   Strawn?

11          MS. GOODMAN:  Yes, he is.  By way of charging lien.

12   He is asking less than ten percent of the award.  He's

13   asking for a percentage of the $100,000 they received.

14          THE COURT:  He is seeking compensation based on an

15   illegal contingent fee agreement, illegal by virtue of the

16   language of 22 USC 1623(f).

17          MS. GOODMAN:  Your Honor, what we are suggesting is

18   under the rules of severability, this contract, there's only

19   one operable paragraph in this contract.

20          This contract provides for severability.

21          It says:  If I am discharged this is what I can

22   get.

23          He was discharged and that is what he's trying to

24   get, not a third -- he's not trying to get a third of

25   anything.  He's trying to get a percentage of the ten

26   percent -- a percentage of the ten percent which Winston &

15

1                       -Proceedings-

2    Strawn pocketed.

3            I don't think the supremacy clause has anything to

4    do with this.  The supremacy clause would apply if there

5    were a state law that said you could get 20 percent from a

6    Commission award.  That would be direct opposition to a

7    federal law.  There's no federal law that says that you

8    can't have --an agreement can't be severable.

9            THE COURT:  Winston & Strawn was successful in

10   recovering an award on behalf of Ms. Simpson by going to the

11   Federal Commission and prevailing under a particular

12   statute.

13           MS. GOODMAN:  No.  No.

14           He prevailed under a claim that was originally made

15   by Mr. Sorenson, originally supported by Mr. Sorenson,

16   originally briefed by Mr. Sorenson.

17           THE COURT:  All of in violation of that statute?

18           MS. GOODMAN:  No.

19           THE COURT:  Yes.  Because it was based on a

20   retainer agreement that is unlawful under the statute.

21           MS. GOODMAN:  A section of a retainer which was

22   never operative in this circumstances.  He never saw --

23           THE COURT:  First of all, the prior retainer

24   agreement looks even, my goodness, this is usurious.  The

25   prior agreement he's asking for 30 percent of the first

26   250,000 recovered, 25 percent of the next $250,000

16

1                           -Proceedings-

2      recovered, 20 percent of the next 500,000 recovered.

3                MS. GOODMAN:  Your Honor, when you add this up this

4      is less than a third of the recovery and this was filed with

5      New York State Court as a retainer agreement; this is a

6      Bloomberg form.

7                He worked all these years and he got not a penny.

8      He did this because it was family.  He was not an

9      experienced practicing lawyer.  He happens to have had a

10     brilliant mind because he was able to get through the

11     Federal court.  He worked for 12 years and they did not pay

12     him a cent.  And when he tried -- even when Mr. Brandon took

13     over the case.

14               THE COURT:  You have a separate matter with -- is

15     there a separate matter?

16               MS. GOODMAN:  Yes, there is a separate matter.  We

17     are suing Simpson.

18               THE COURT:  That really is the place to try to get

19     this done.  As far as Winston & Strawn concerned, they did

20     what they were asked to do.  They did it in accordance with

21     the federal statute.  They didn't depending upon the

22     services of Mr. Sorenson and they were able to achieve the

23     result.

24               MS. GOODMAN:  Your Honor, they depended totally on

25     the work of Mr. Sorenson, the work product of Mr. Sorenson.

26               THE COURT:  Do they have anything where they asked

17

1                          -Proceedings-

2       for his assistance?

3              MS. GOODMAN:  No, I don't because they didn't.  You

4       don't have to.  Under the Court of Appeals of the State of

5       New York in the case of --it is in my brief.-- I think it is

6       Prompton -- you don't need to have --the behest requirement

7       in unjust enrichment has been dropped.  You no longer have

8       to-- there's no privity necessary.

9              THE COURT:  The case is in the name.

10             MS. GOODMAN:  Also, when Mr. Bravon also violated

11      the rules of professional responsibility.  He was sent a

12      charging lien.  He was asked to notify Mr. Sorenson if the

13      decision came down or if any money came down.  He absolutely

14      ignored him.  Total violation of the Rules of Professional

15      Responsibility.

16             THE COURT:  What responsibility did he have to your

17      client?

18             MS. GOODMAN:  Once he received a charging lien

19      knowing that my client had a financial interest in the case,

20      he had an obligation to inform him not only when the

21      decision came down but when the money came down.  It is

22      well -- under the rules of professional responsibility.

23             THE COURT:  I don't have any reason to deal with

24      that.  You have claims to make against particular attorney

25      under the Rules of Professional Responsibility you could

26      have your client make them.

18

1                          -Decision-

2          MS. GOODMAN:  Okay.

3          THE COURT:  Thank you.

4          Having heard from all counsel with respect to the

5     motion to dismiss the amended complaint and I have read the

6     papers before in opposition to the motion.  It is this

7     Court's view that the motion is well-taken and that it

8     should be granted.

9          I have heard from Ms. Goodman regarding the

10    exceptional efforts of her client over the years to try to,

11    in good faith, provide services on behalf of Ms. Simpson.

12         The case here is one with respect to a new attorney

13    that has taken on the task that had originally been

14    initiated by Mr. Sorenson.  In this Court's view the

15    defendant has a right that the statute 22 United States Code

16    Section 1623(f) is critical in that what it says is that the

17    agreement, the retainer agreement, that Mr. Sorenson seeks

18    to recover under, by way of all the complaints in this

19    action is unlawful; unlawful under federal law to the extent

20    that it is -- it sought and was based upon a notion that it

21    would be a 33 and a third percent recovery.  It was in

22    violation of that federal statute which caps not only a

23    recovery at ten percent, but caps any request at ten percent

24    and identifies any retainer agreement that seeks at any

25    point in excess of ten percent recovery as unlawful and in

26    fact criminal and declare such contracts void.

19

1                          -Decision-

2              Accordingly, there is no basis under the law for a

3     charging lien under a void contract.  There's no basis

4     either under for a charging lien where there has been a

5     basis for a dismissal for cause and a contract that is by

6     definition unlawful and by definition criminal under the

7     federal statute is one where there is a discharge for cause

8     whether or not it was even intended.  Accordingly, the claim

9     for charging lien is without basis under the law.

10             The claim for unjust enrichment is also without

11    basis under the law.  Here there are lines.  There is no

12    inducement and, importantly, there are no sense of an

13    equity, which is the issue for unjust enrichment because

14    here there is unclean hands where we have a violation of

15    federal statute in the making of the very retainer

16    agreement.

17             In fact, we have a retainer agreement and the

18    retainer agreement actually covers --even as unlawful as

19    it's --it was clear that the retainer agreement was intended

20    to recover the entirety of the transaction.  It leaves

21    actually a motion of unjust enrichment goes by the wayside

22    because there was an applicable contract, unlawful as it may

23    have been.

24             The claim for conversion does not have merit and

25    that conversion claim is simply about a recovery of money.

26    It is not any specific identifiable unique property, it is

20

-Decision-

1

2    simply cash; as cash it is bonafide but it is not unique.

3    Conversion is meant to address those types of cases where we

4    have a specific property and even in those cases where

5    involves money, it may be money that has been held in a

6    particular form of security or some form of protected piece

7    and this is not that.  This is simply there's been no

8    assignment of money.  This is simply, if it could have been

9    existed, it would have been some type of contract breach as

10   a claim for recovery of money, not anything specifically

11   identifiable as is necessary for conversion.

12            Accordingly, the motion to dismiss the amended

13   complaint is hereby granted and the Court will hereby order

14   the clerk to dismiss the amended complaint forthwith.

15            I direct counsel for defendant to order a copy of

16   the transcript of today's proceedings, present it to the

17   Clerk in Part 43 as soon as possible, preferably within

18   14 days, for so ordering to reflect the Court's decision and

19   order of this date.

20            The record is closed.

21            (Whereupon, the proceedings concluded.)

22               *            *            *

23

24            It is hereby certified that the foregoing is a true

     and accurate transcript of the proceedings.

25

26   DEBORAH A. ROTHROCK, RPR
     Official Court Reporter

DEBORAH A. ROTHROCK - OFFICIAL COURT REPORTER

**FILED: NEW YORK COUNTY CLERK 05/03/2017 02:48 PM**   INDEX NO. 158124/2015

NYSCEF DOC. NO. 31   RECEIVED NYSCEF: 05/03/2017

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

**PRESENT:**   **HON. ROBERT R. REED**   **PART** 43
J.S.C. *Justice*

Index Number : 158124/2015   INDEX NO. _____
SORENSON, ERIC
vs.   MOTION DATE _____
WINSTON & STRAWN, LLP
SEQUENCE NUMBER : 002   MOTION SEQ. NO. _____
REARGUMENT/RECONSIDERATION

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is denied. In support of its motion, Plaintiffs fails to offer matters of fact or law allegedly overlooked or misapprehended by the court in determining the underlying motion. Accordingly, it is hereby

ORDERED that the motion of plaintiffs for leave to reargue is denied

Dated: 5/1/17   _____, J.S.C.

1. CHECK ONE: ........................................... [X] CASE DISPOSED   [ ] NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...................MOTION IS: [ ] GRANTED [X] DENIED   [ ] GRANTED IN PART   [ ] OTHER

3. CHECK IF APPROPRIATE: ...................................... [ ] SETTLE ORDER   [ ] SUBMIT ORDER
[ ] DO NOT POST   [ ] FIDUCIARY APPOINTMENT   [ ] REFERENCE

1 of 1

Case 1:15-cv-04614-AMD-SJB   Document 54   Filed 08/28/17   Page 26 of 30 PageID #: 400

EXHIBIT C

| | | INDEX NO.: | 158124-2015E |
| | | PLAINTIFF: | SORENSON, ERIC |
| | | DEFENDANT: | WINSTON & STRAWN, LLP |
| | | CASE STATUS: | DISPOSED |
| | | ACTION | E-OTHER TORTS |
| | | LAST UPDATE: | 08-27-2017 8:00PM |
| | | JUSTICE: | REED, ROBERT R. |

Home / SCROLL / CASE DETAILS

SEARCH AGAIN   |                                [ Search ]

**KEY TO LINKS BELOW**

**COUNTY CLERK INFORMATION**
- FULL CAPTION
- COUNTY CLERK MINUTES
- CC - CIVIL INDEX INQUIRY

**COURT INFORMATION**
- CASE CAPTION
- CASE INFORMATION
- ATTORNEYS
- APPEARANCES
- MOTIONS
- COMMENTS
- ASSIGNED JUSTICE

Filter: | Motion Number ▼ |

[ Submit ]  [ Clear ]

| Sort By | Doc # | Date Received | Document | Description | Motion # | Filing User | Payment Info |
|---|---|---|---|---|---|---|---|
| 31 | 1 | 2015-08-06 | SUMMONS WITH NOTICE | - | - | PETER EIKENBERRY | AMOUNT: $ 08/06/2015 |
| 30 | 2 | 2015-08-06 | COMPLAINT | - | - | PETER EIKENBERRY | AMOUNT: $ 08/06/2015 |
| 29 | 3 | 2016-01-27 | SUMMONS (PRE RJI) (AMENDED) | - | - | LORNA GOODMAN | AMOUNT: $ 01/27/2016 |
| 28 | 4 | 2016-01-27 | COMPLAINT (AMENDED) | - | - | LORNA GOODMAN | AMOUNT: $ 01/27/2016 |
| 27 | 5 | 2016-01-27 | CONSENT TO CHANGE ATTORNEY (PRE RJI) | - | - | LORNA GOODMAN | AMOUNT: $ 01/27/2016 |
| 26 | 6 | 2016-02-16 | NOTICE OF MOTION | NOTICE OF MOTION TO DISMISS AMENDED COMPLAINT | 001 | JOHN AERNI | VISA/MC AMOUNT: $45 02/16/2016 |
| 25 | 7 | 2016-02-16 | MEMORANDUM OF LAW IN SUPPORT | MEMORANDUM OF LAW IN SUPPORT OF WINSTON & STRAWN LLP'S MOTION TO DISMISS THE AMENDED COMPLAINT | 001 | JOHN AERNI | AMOUNT: $ 02/16/2016 |
| 24 | 8 | 2016-02-16 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | AFFIRMATION OF JOHN M. AERNI IN SUPPORT OF MOTION TO DISMISS | 001 | JOHN AERNI | AMOUNT: $ 02/16/2016 |

| Sort By | Doc # | Date Received | Document | Description | Motion # | Filing User | Payment Info |
|---------|-------|---------------|----------|-------------|----------|-------------|--------------|
| 23 | 9 | 2016-02-16 | EXHIBIT(S) | EXHIBITS A - G TO MOTION TO DISMISS AMENDED COMPLAINT | 001 | JOHN AERNI | AMOUNT: $ 02/16/2016 |
| 22 | 10 | 2016-02-16 | RJI -RE: NOTICE OF MOTION | - | 001 | JOHN AERNI | VISA/MC AMOUNT: $95 02/16/2016 |
| 21 | 11 | 2016-02-22 | AFFIRMATION/AFFIDAVIT OF SERVICE | - | - | LORNA GOODMAN | AMOUNT: $ 02/22/2016 |
| 20 | 12 | 2016-03-03 | STIPULATION - OTHER | - | 001 | LORNA GOODMAN | AMOUNT: $ 03/03/2016 |
| 19 | 13 | 2016-03-03 | STIPULATION - SO ORDERED | - | 001 | COURT USER | AMOUNT: $ 03/03/2016 |
| 18 | 14 | 2016-04-20 | MEMORANDUM OF LAW IN OPPOSITION | - | 001 | LORNA GOODMAN | AMOUNT: $ 04/20/2016 |
| 15 | 17 | 2016-05-11 | EXHIBIT(S) | EX. H TO J. AERNI AFFIRM. - AMENDED COMPLAINT | 001 | JOHN AERNI | AMOUNT: $ 05/11/2016 |
| 16 | 16 | 2016-05-11 | AFFIDAVIT OR AFFIRMATION IN REPLY | REPLY AFFIRMATION OF JOHN M. AERNI IN FURTHER SUPPORT OF MOTION TO DISMISS | 001 | JOHN AERNI | AMOUNT: $ 05/11/2016 |
| 17 | 15 | 2016-05-11 | MEMORANDUM OF LAW IN REPLY | REPLY MEMORANDUM OF LAW IN SUPPORT OF WINSTON & STRAWN LLP'S MOTION TO DISMISS AMENDED COMPLAINT | 001 | JOHN AERNI | AMOUNT: $ 05/11/2016 |

| Sort By | Doc # | Date Received | Document | Description | Motion # | Filing User | Payment Info |
|---|---|---|---|---|---|---|---|
| 14 | 18 | 2016-05-11 | EXHIBIT(S) | EX. I TO J. AERNI AFFIRM. - [INITIAL] COMPLAINT | 001 | JOHN AERNI | AMOUNT: $ 05/11/2016 |
| 13 | 19 | 2016-06-10 | DECISION + ORDER ON MOTION | - | 001 | COURT USER | AMOUNT: $ 06/10/2016 |
| 11 | 21 | 2016-06-22 | NOTICE OF ENTRY | NOTICE OF ENTRY OF SO ORDERED TRANSCRIPT | 001 | JOHN AERNI | AMOUNT: $ 06/22/2016 |
| 12 | 20 | 2016-06-22 | TRANSCRIPT - SO ORDERED | - | - | COURT USER | AMOUNT: $ 06/22/2016 |
| 10 | 22 | 2016-07-13 | NOTICE OF MOTION | - | 002 | LORNA GOODMAN | AMERICAN EXPRESS AMOUNT: $45 07/13/2016 |
| 9 | 23 | 2016-07-13 | MEMORANDUM OF LAW | - | 002 | LORNA GOODMAN | AMOUNT: $ 07/13/2016 |
| 8 | 24 | 2016-07-13 | EXHIBIT(S) | LIST OF FCSC CLAIMANTS | 002 | LORNA GOODMAN | AMOUNT: $ 07/13/2016 |
| 7 | 25 | 2016-07-20 | NOTICE OF APPEAL | - | - | LORNA GOODMAN | AMERICAN EXPRESS AMOUNT: $65 07/20/2016 |
| 6 | 26 | 2016-07-20 | PRE-ARGUMENT STATEMENT | - | - | LORNA GOODMAN | AMOUNT: $ 07/20/2016 |
| 5 | 27 | 2016-07-22 | STIPULATION - ADJOURNMENT OF MOTION -IN SUBMISSIONS PART -RM 130 | STIPULATION TO ADJOURN MOTION TO REARGUE UNTIL AUGUST 25, 2016 | 002 | JOHN AERNI | AMOUNT: $ 07/22/2016 |

| Sort By | Doc # | Date Received | Document | Description | Motion # | Filing User | Payment Info |
|---|---|---|---|---|---|---|---|
| 4 | 28 | 2016-08-12 | MEMORANDUM OF LAW IN OPPOSITION | DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REARGUE | 002 | JOHN AERNI | AMOUNT: $ 08/12/2016 |
| 3 | 29 | 2016-08-12 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | AFFIRMATION OF JOHN M. AERNI WITH EXHIBIT A (BOOKMARKED) | 002 | JOHN AERNI | AMOUNT: $ 08/12/2016 |
| 2 | 30 | 2016-08-22 | SUR-REPLY | - | 002 | LORNA GOODMAN | AMOUNT: $ 08/22/2016 |
| 1 | 31 | 2017-05-03 | DECISION + ORDER ON MOTION | - | 002 | COURT USER | AMOUNT: $ 05/03/2017 |

Documents that have been entered into the minutes of the County Clerk bear a stamp stating "Filed," followed by the date of filing (entry date) and the words "New York County Clerk's Office." Except in matrimonial cases (documents for which are not included in Scroll), judgments are not entered by the County Clerk until an attorney for a party to the case appears at the Judgment Clerk's desk (Rm. 141B at 60 Centre Street) and requests entry. Copies of unfiled judgments bearing a stamp stating "Unfiled Judgment" and a notice to counsel may be found in Scroll. For technical reasons, some long form orders or other documents that were scanned in the early phase of this project may be categorized here as a "Decision."

BACK   NEW SEARCH

60 Centre Street, New York, N.Y. 10007
Copyright © 2006 Unified Court System

## AFFIRMATION OF SERVICE

I, Sandra Simpson, declare under penalty of perjury, that I have served a copy of the foregoing letter to the Judge, with Exhibits, on opposing counsel:

> Lorna Goodman
>
> 551 Madison Ave,  7th floor
>
> New York, NY, 10022

by:   US Mail

August 28, 2017

Sandra  Simpson

419 Aderhold Rd

Saxonburg, PA 16056

724-352-9206

simpsonfuture@gmail.com